## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DAVID P. JACKSON,       )
                     )
          **Plaintiff,**   )
                     )
v.                     )
                     )       **No. 11-2527-CM-DJW**
                     )
CITY OF OVERLAND PARK, KANSAS,  )
et al.,               )
                     )
          **Defendants.**  )
                     )

## MEMORANDUM AND ORDER

Plaintiff David P. Jackson originally filed this civil rights class action in the district court of Johnson County, Kansas.  Defendant City of Overland Park (the "City") removed the action to this court with the consent of codefendant Linebarger Goggan Blair & Sampson, LLP, ("Linebarger").  Before the court is Defendant City of Overland Park, Kansas' Motion to Dismiss (Doc. 26) and Defendant [Linebarger's] 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 28).  For the reasons that follow, the court grants the motions.

**I.      Factual Background**

In his second amended complaint (Doc. 22), plaintiff asserts four claims under 42 U.S.C. §§ 1983 and 1985: (1) Conspiracy to Violate Rights Under Color of Law; (2) Right to Property; (3) Conspiracy to Impede Due Process; and (4) Illegal Threat of Imprisonment to Collect Debts Under Color of Law.  Plaintiff alleges that the City, through its attorney, Linebarger, has a standard practice of sending collection demands to individuals, including plaintiff, that "falsely state that a warrant has been issued and the only way to resolve the warrant is full payment [of] fines, fees, and costs."  (Doc.

22 at 18.)

Plaintiff Jackson asserts that his experience is typical of the class.  According to the complaint, he is a resident of the City, and received a ticket in April, 2010, for speeding and failing to show proof of insurance.  He failed to appear for his court date on May 3, 2010, and again failed to appear on June 10.  The municipal court issue a bench warrant with an appearance bond of $500.00.

Plaintiff was arrested on July 7, 2010, and taken to the Johnson County Adult Detention Center.  There, he was subjected to a strip search, was placed in general population, and was detained until brought before the municipal court by video conference the following day, July 8, 2010.  He asserts that he was not permitted to post bond prior to appearing in the City's municipal court, although the City contests this assertion.

At his appearance by video conference, plaintiff informed the court that he did not have the ability to pay any fine, that his failure to appear in court was inadvertent, and that he had not been allowed to post bond after his arrest.  He pleaded guilty to the speeding citation and the court imposed a $100 fine as a sentence.  The City also imposed $70 of jail fees, DNA fees, and court costs.  Due to plaintiff's inability to pay the fine, he was provided a "Promise to Appear or Pay Fines" document, and ordered to appear on the "Time to Pay" docket on August 5, 2010.

Plaintiff did appear, and informed the City that he was unable to pay the amount owed, which at that time was in excess of $500 due to the fees added to the initial fine.  The City told plaintiff that he must perform labor via community service to "work off" the fine, fees and costs to avoid future incarceration.  He was ordered to appear at another "Time to Pay" docket on August 19, 2010.

Plaintiff informed the City that he was unable to perform community service due to health

-2-

and life restrictions, but he agreed to perform community service in order to avoid further imprisonment.  Plaintiff failed to appear at the August 19, 2010 docket.  He also missed a court appearance on December 2, 2010, and an arrest warrant was issued for plaintiff with a bond of $639.00.

On February 9, 2011, plaintiff was arrested on the warrant and was taken to the Johnson County Adult Detention Center.  Plaintiff again asserts that he was not allowed the opportunity to post the bond specified on the warrant.

On February 11, 2011, plaintiff was released via a personal recognizance bond of $1,000.00.  An additional fee for confinement was imposed in the amount of $35.00.

 Plaintiff failed to appear for the "Time to Pay" docket on February 24, 2011.  On March 2, 2011, plaintiff continued the February 24, 2011 court date, notifying the City of his inability to pay fines.  He was provided another "Promise to Appear or Pay Fines," requiring payment of all fines, fees, and costs or appearance by April 7, 2011, and warning him that he may be subject to arrest.

Plaintiff continued the April 7, 2011, court date, notifying the City that he did not have the ability to pay fines, and was provided another "Promise to Appear or Pay Fines" requiring payment of all fines, fees, and costs or appearance by May 19, 2011, and warning him that he may be subject to arrest.

Plaintiff failed to appear on May 19, 2011 and his personal recognizance bond of $1,000.00 was later declared forfeited by the municipal court.

On June 22, 2011, defendant Linebarger sent plaintiff a collection demand entitled "WARRANT NOTIFICATION," indicating plaintiff now owed $2,207.80 for failure to pay traffic fines and fees for his April 2010 speeding citation.  The demand warned that a warrant had been issued for plaintiff's arrest.  According to plaintiff's complaint, the "WARRANT NOTIFICATION"

-3-

falsely indicated that the City's warrant would remain active until plaintiff paid the entire $2,207.80.

Upon receipt of this letter, plaintiff experienced fear and anxiety; he believed that payment in full was the only way to avoid incarceration, but he was unable to pay $2,207.80 to the City. Plaintiff asserts that between June 22, 2011, and July 6, 2011, uniformed Overland Park police officers came to plaintiff's father's home to execute a purported warrant for plaintiff's arrest. On July 6, 2011, plaintiff asked the municipal court for additional time to pay the fine or complete community service. Plaintiff agreed to another "Promise to Appear or Pay Fines" by August 3, 2011, or be subject to arrest.

Despite having this new promise and "Time to Pay" docket appearance scheduled for August 3, 2011, defendant Linebarger sent Plaintiff Jackson another "WARRANT NOTIFICATION" on July 22, 2011, indicating that the City had issued another warrant for plaintiff's arrest and that the warrant would remain active and until Plaintiff paid the entire $2,207.80 to Defendant Overland Park.

Because plaintiff received another warrant notice, and could not pay $2,207.80 in fines, fees, and costs, plaintiff did not go to his August 3, 2011 court date "for fear of being thrown in jail indefinitely for being poor." (Doc. 22 at 14.)

Plaintiff was arrested on September 18, 2011, after his initial petition was filed in this case. He appeared via video in municipal court the next day, September 19, 2011. This time plaintiff was released on a $500.00 personal recognizance bond. Since the filing of the original petition in this case, plaintiff has received correspondence from Linebarger and the City indicating that a warrant has been issued for his arrest and that it will remain active until he pays, in full, an amount exceeding $2,200.00.

Plaintiff claims that this process—specifically, the false and coercive threats contained in the

"WARRANT NOTIFICATION" letters—violated his constitutional rights and the constitutional rights of the class.

## II.     Judgment Standard

In reviewing a Rule 12(b)(6) motion to dismiss, the court assumes as true all well-pleaded facts, and construes any reasonable inferences from these facts in favor of plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1951 (2009); *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the factual allegations need not be detailed, they must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008).

## III.     Analysis

The City claims it is entitled to judgment because the statement in the Linebarger letters—that any outstanding warrant will remain in force until the obligation is fully paid—is not false; and there are no facts alleged to demonstrate either a violation of plaintiff's constitutional rights or a conspiracy among defendants to violate plaintiff's rights. Linebarger asserts that plaintiff's claims fail because, simply put, plaintiff has no constitutional right to be free from a lawful threat of arrest and Linebarger's correspondence did not violate plaintiff's constitutional rights.

In order to survive a Rule 12(b)(6) motion to dismiss a § 1983 claim, a plaintiff must allege "'(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of

-5-

Columbia.'" *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005) (quotation omitted).

Municipal entities such as defendant City are considered "persons" to whom § 1983 liability applies. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (citing *Monell v. N.Y. City Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978)). And liability can extend to a private party if that party is a willful participant in joint action with the state actor. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. 1995). But to establish municipal liability under § 1983, plaintiff must show (1) the unconstitutional action is representative of an official municipal policy or custom, or is taken by an official with final policy-making authority; and (2) that there is "a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993–94 (10th Cir. 1996) (citations omitted).

**Sufficiency of Claims Generally**

In this case, the court cannot reach the question of whether a municipal policy or custom caused plaintiff's injury, because plaintiff's Second Amended Complaint fails to identify the precise constitutional right that was allegedly infringed. *See McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011).

Count I alleges that the defendants conspired to deprive plaintiff and the class of "their right to property and the right to be free from unwanted restrictions on liberty" by "using false statements to coerce payment of municipal fines, fees and costs. . . ." (Doc. 22 at 14.) Although not explicitly alleged, this claim, like Count III, appears to implicate the rights protected by the Due Process Clause of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment "protects against governmental deprivations of life, liberty, or property without due process of law." *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994). To state a § 1983 claim for deprivation of property or liberty without due process, plaintiff must allege a constitutionally

-6-

protected property interest, and that he was deprived of that interest by state action.  If these elements are alleged, the question becomes what process was due and whether it was provided.  *See Winters v. Bd. of County Comm'rs*, 4 F.3d 848, 856 (10th Cir. 1993); *Graham v. City of Okla. City*, 859 F.2d 142, 144 (10th Cir. 1988).

Count II alleges that defendants deprived plaintiff and the class of "their right to inherit, purchase, lease, sell, hold, and convey personal property by falsely coercing individuals to pay debts to the city under threat of imprisonment."  (Doc. 22 at 15.)  This language echoes the language of 42 U.S.C. § 1982, which governs the property rights of citizens and prohibits race discrimination.  This section was enacted to implement the Thirteenth Amendment.  *United States v. Harris*, 106 U.S. 629 (1883).  However, plaintiff is not bringing a claim under § 1982.  And plaintiff admittedly makes no allegation of race discrimination.

Count III alleges defendants conspired to "impede due process" and deny protection of the law by falsely claiming that arrest warrants will remain active until entire debts are paid.  (Doc. 22 at 15–16.)

Count IV does not identify any constitutional right, but alleges defendants "illegal[ly] threat[ened] imprisonment to collect debts."  (Doc. 22 at 16.)

Additionally, to support his conspiracy claims, plaintiff must allege facts sufficient to show agreement and concerted action.  *Fisher v. Lynch*, 571 F. Supp. 2d 1230, 1235 (D. Kan. 2008).

 Even if plaintiff had identified the specific constitutional amendment implicated by defendants' conduct, plaintiff fails to allege facts establishing conspiracy, causation, or the actual deprivation of any constitutionally protected right.

**False Statements?**

The challenged statement in the collection letter from Linebarger cautions: "until the court

receives full payment from you, the warrant will remain active and you may be subject to arrest . . . ."
Defendants maintain that statement is true: a warrant will remain outstanding until the obligation is
paid in full. In other words, a partial payment to Linebarger, a collection agency, will not resolve the
warrant. Only full payment will result in the City withdrawing the warrant.

Each of plaintiff's counts is based on a conclusory allegation that the letters falsely coerce
payment from individuals. But plaintiff fails to offer any facts suggesting that this statement is
untrue. And even if the statement was false as plaintiff asserts, plaintiff fails to allege how such
statement results in a constitutional violation.

**Coercive Threats?**

In addition to the flawed grounds for the claims, the facts alleged by plaintiff establish that
plaintiff has not actually been coerced to make a payment: he did not and has not paid the amount
owing.

Plaintiff suggests that a mere threat can constitute an actionable constitutional violation.
(Doc. 35 at 7 (citing *Suasnavas v. Stover*, 196 F. App'x 647, 657 (10th Cir. 2006) (holding that the
plaintiff's § 1983 complaint contained sufficient facts to survive motion to dismiss where
defendants' threats deprived plaintiff of the association and companionship of her parents).)
However, a threat constitutes an actionable constitutional violation only if the threat exerts coercive
pressure on plaintiff and plaintiff suffers the deprivation of a constitutional right. *See Suasnavas*,
196 F. App'x at 657 (quoting *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir. 1997)); *see
also Pierzynowski v. Police Dept. City of Detroit*, 941 F. Supp. 633 (E.D. Mich. 1996) (holding
prosecutor's statement to mother of minor who was alleged victim of criminal sexual assault, that if
mother did not cooperate with interview and prosecution, prosecutor would contact social services
agency to investigate her household, did not constitute an improper threat to a witness so as to

-8-

support accused's subsequent § 1983 action; statement came after mother, who had originally testified to daughter's informing her of sexual incident, changed her story and took daughter back to accused's home, leading prosecutor to believe mother was being pressured by family members); *Arnold v. Truemper*, 833 F. Supp. 678 (N. D. Ill. 1993) (holding mere alleged threats by police officers to violate bank customers' due process rights were insufficient to support § 1983 action, absent any actual violation of due process); *Flanigan v. Kent County Sheriff's Dep't*, 817 F. Supp. 660 (W.D. Mich. 1993) (holding state actor's threat to violate citizen's constitutional rights is not actionable under § 1983).

As mentioned previously, plaintiff fails to allege that he was actually coerced into making payment, or that defendants' "threats" actually resulted in the deprivation of any specific constitutionally protected right.  In his response to the instant motions, plaintiff attempts to clarify that the challenged statements "resulted in actual restraint on [p]laintiff's freedom of movement." (Doc. 35 at 7.)  This contention is not plausible, and the court rejects it.

**A Different Theory** – **Violation of Kansas Constitution**

In response to the motions to dismiss, plaintiff argues that he has sufficiently pleaded "facts that establish plausibility" by showing that plaintiff and the class "possess liberty and due process rights that were violated by the wrongful conduct of defendants."  (Doc. 35 at 4.)  Specifically, plaintiff asserts that if the challenged statement in the Linebarger letters is true, then defendants have violated plaintiff's rights under Section 16 of the Kansas Bill of Rights, which guarantees freedom from imprisonment for debt.

First, this legal theory does not appear in the complaint.  And the court will not permit a futile amendment.  An alleged violation of a state constitution cannot form the basis of a § 1983 claim. That section provides remedies only for deprivation of rights secured by the United States

Constitution. *See* 42 U.S.C. § 1983; *see, e.g.*, *Hood v. Prisoner Health Servs., Inc.*, No. 05-3198, 2006 WL 1230688 at *3 (10th Cir. May 9, 2006) (holding that prisoner's allegations under the Kansas constitution were not cognizable under § 1983, citing *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988)).

**Another Theory** – **Violation of Fourth Amendment**

Also for the first time in his response, plaintiff suggests that the Second Amended Complaint "clearly alleges violation of [plaintiff's] and the class's right to be free from unwanted restrictions on liberty, including seizure, which rights are contained within . . . the Fourth Amendment." (Doc. 35 at 9.) The basis for this assertion is unclear: the only possible seizure, on the facts alleged, is plaintiff's arrest. But it is also clear that plaintiff's arrest is not the basis for his § 1983 claims: the threatening letters are the basis for the claims. The contention has no merit.

**Conclusion**

Although the court considers all well-pleaded facts to be true and construes them in plaintiff's favor, the court need not accept conclusory allegations. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Likewise, the court will not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citations omitted). Nor will the court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citation omitted).

Plaintiff does not identify any protected right that was infringed in this case, or clearly allege that any unconstitutional policy violated that right. Defendants are correct that he refers to the defendants' efforts to coerce payment of fines. But plaintiff does not identify a property or due

-10-

process right implicated by these activities.  Nor does he allege that he was coerced into actually

making payment because he has made no payment.  By way of response, he appears to shift his

theory of the case to suggest that if the statements are true, they violate the Kansas Constitution, but

this does not state a claim under § 1983.  Under the facts as alleged in the complaint, even viewed in

plaintiff's favor, the threat of action described here does not constitute deprivation of a constitutional

right.  Plaintiff's complaint is factually and legally insufficient to state a claim.

　　　　As an aside, the court is compelled to express its concerns about the representation plaintiff

has received in this case.  Although the pleadings have been filed and signed by counsel, they read

like *pro se* filings.  Attorneys have an ethical obligation to provide competent representation to their

clients.  Rule 1.1 (Kan. Ct. R. Annot. 226).  As stated in comment 5 to Rule 1.1 of the Kansas Rules

of Professional Conduct,

> Competent handling of a particular matter includes inquiry into and analysis of the
> factual and legal elements of the problem, and use of methods and procedures
> meeting the standards of competent practitioners.  It also includes adequate
> preparation.  The required attention and preparation are determined in part by what is
> at stake; major litigation and complex transactions ordinarily require more elaborate
> treatment than matters of lesser consequence.

　　　　This action purports to be a class action based on alleged violations of the United States

Constitution.  The materials filed in this case by plaintiff's counsel are concerning to the court.  The

court is aware that counsel has appeared in cases in this court on several occasions and this issue has

not previously arisen.  The court will give plaintiff's counsel the benefit of the doubt in this instance,

but encourages counsel to ensure that the representation he provides meets the standards of

competent legal practitioners, which includes adequate review, attention, preparation, inquiry, and

analysis.

　　　　**IT IS THEREFORE ORDERED** that Defendant City of Overland Park, Kansas' Motion to

Dismiss (Doc. 26) and Defendant [Linebarger's] 12(b)(6) Motion to Dismiss Plaintiff's Second

Amended Complaint (Doc. 28) are granted.

Dated this 11th day of April, 2012, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**